26CA0160 Filtz v ICAO 07-23-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 26CA0160
Industrial Claim Appeals Office of the State of Colorado
DD No. 23715-2025

Dustin Filtz,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado,

Respondent.

ORDER AFFIRMED

Division V
Opinion by JUDGE YUN
Lipinsky and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 23, 2026

Dustin Filtz, Pro Se

No Appearance for Respondent

¶ 1     In this unemployment benefits case, Dustin Filtz, appearing pro se, appeals a final order of the Industrial Claim Appeals Office (the Panel) assessing penalties against him for fraudulently underreporting income.  We affirm.

## I.     Background

¶ 2     Filtz, an employee of AB Car Rental Services, Inc. (the Employer), filed for partial unemployment benefits for several years under section 8-73-103(1), C.R.S. 2025.  This provision allows for benefits when workers experience periods of partial unemployment throughout the year.  § 8-73-103(1).  According to Filtz, he was employed year-round, but worked reduced hours when business slowed.

¶ 3     The Division of Unemployment Insurance (the Division) audited five years of Filtz's benefit filings.  The audit found that Filtz reported $29,606.65 in combined earnings between 2000 and 2024, but in actuality, including commissions, he earned $76,918.23 during that period.

¶ 4     A deputy for the Division issued a determination that Filtz had underreported his earnings.  The deputy also issued a notice of fraud under section 8-81-101(4)(a)(II), C.R.S. 2025, which requires

repayment of benefits plus a penalty equal to 65% of the total if benefits are obtained through false statements or willful failure to disclose material facts.

¶ 5     Filtz appealed, and a hearing was held where two Division representatives — the deputy who issued the determinations and a criminal investigator — and Filtz testified.  The hearing officer affirmed the deputy's overpayment finding but reversed the fraud determination.  The hearing officer concluded that Filtz underreported his commissions due to a "lack of information outside of his control," and thus his actions "did not rise to a level of providing false representations or a willing failure to disclose material information."

¶ 6     The Division appealed to the Panel, which affirmed the hearing officer's overpayment decision.  The Panel, however, found that sufficient evidence supported a fraud finding under section 8-81-101(4)(a)(II).  The Panel concluded that Filtz "should have known, easily could have known, or knew and failed to comply with the requirement to disclose his commissions as earnings to the Division."

¶ 7    Representing himself, Filtz appeals the Panel's order.  *See Johnson v. McGrath*, 2024 COA 5, ¶ 10 (although we must construe pro se arguments liberally, it is not our role to rewrite a pro se litigant's arguments or to act as an advocate for a pro se litigant).

## II.    Analysis

¶ 8    Filtz urges us to set aside the Panel's decision because it erred by finding that he committed fraud by willfully failing to disclose his commissions and by misapplying case law governing fraud in unemployment cases.  We are not persuaded.

### A.    Standard of Review and Applicable Law

¶ 9    We may set aside the Panel's decision only if its findings of fact do not support the decision or if the decision is erroneous as a matter of law.  § 8-74-107(6)(c)-(d), C.R.S. 2025.  We may not disturb the hearing officer's factual findings if they are "supported by substantial evidence or reasonable inferences drawn from that evidence."  *Yotes v. Indus. Claim Appeals Off.*, 2013 COA 124, ¶ 10.  However, we review de novo ultimate conclusions of fact and legal conclusions.  *Commc'ns Workers of Am. 7717 v. Indus. Claim Appeals Off.*, 2012 COA 148, ¶ 7; *Cath. Health Initiatives Colo. v. Indus. Claim Appeals Off.*, 2021 COA 48, ¶ 14.

¶ 10     To be eligible for unemployment benefits for a particular week, a claimant's earned wages must be less than his weekly benefit amount.  § 8-73-107(1)(f), C.R.S. 2025.  If a claimant receives excess benefits due to fraud, mistake, or clerical error, the Division is required to recover the overpayment.  § 8-74-109(2), C.R.S. 2025. To show fraud under section 8-81-101(4)(a)(II), the Division must establish a false representation or willful failure to disclose a material fact.  *Id.*

¶ 11     A "false representation" occurs when a statement is "made knowing it to be false or with an awareness that the maker did not know whether it was true or false."  *Div. of Emp. & Training v. Indus. Comm'n,* 706 P.2d 433, 435 (Colo. App. 1985).

¶ 12     Section 8-81-101(4)(a)(II) lists circumstances in which an overpayment is *not* considered the result of fraud.  Under this section, a person is not deemed to have made a false representation or willfully failed to disclose a material fact if the person:

- provided all information requested by the Division correctly, but the Division failed to take appropriate action with that information or took delayed action when determining or redetermining eligibility;

- provided incorrect information due to conflicting, changing, or confusing information or instructions from the Division;

- was unable to reach the Division despite the person's best efforts to inquire or clarify what information the person needed to provide, or experienced other similar barriers, including that it was the person's first time applying for or receiving unemployment benefits;

- experienced language, education, or literacy barriers; or

- had an employer who provided the person with incorrect or untimely information or did not timely report facts.

## B.    Additional Facts

¶ 13    At the hearing, the Division's investigator testified that she was assigned to Filtz's case in October 2024.  She served a court order for the production of records on the Employer, which then provided payroll documents.  As she cross-referenced those documents with the weekly amounts that Filtz reported, she explained, "it became apparent that not only was he being paid hourly wages, but he was receiving significant commission checks every month."

¶ 14    The investigator testified that a definition of "commission" was provided each time Filtz requested payment on the Division website. She testified that Filtz was informed each time he certified his earnings that he must "at least estimate" his commissions and then "go back after the fact" when he received the commission check to update his earnings or contact the Division.

¶ 15    The investigator also testified that she reviewed twenty-seven phone calls Filtz made to the Division between 2020 and 2025. According to the investigator, the phone calls were "predominantly requesting a backdate or wondering why payment had not been issued, or wondering when the next level of benefits would be loaded."

¶ 16    The investigator's testimony was corroborated by Division evidence including "sample screenshots" of the online forms Filtz would have completed each week to receive payment. One such screen displayed:

> You must report work *even if you have not been paid yet.* By work we mean any activity, even if it's just for one hour, for which you receive a payment. This includes all work, including Full-Time, Temporary Work, Self-Employment, Military Employment, Federal

> Employment, *Commission,* Paid Training,
> 1099, and Contract Jobs.

(Emphasis added.)

¶ 17    The screenshots further showed that, before submitting his earnings report, Filtz was required to certify "under the penalty of perjury that the information [he] provided [was] valid and accurate," and that he understood the "severe penalties for providing false or misleading information including criminal prosecution."

¶ 18    Filtz testified that his commission structure varied over the years, making it difficult to predict his earnings. When asked if he reported any commissions to the Division between 2020 and 2024, he responded that he did not. His only explanation was that it was "impossible for him to report how the commission structure works." He also testified that he never saw instructions requiring him to report commissions. When asked if he had not read the instructions correctly during the online certification process, he answered "possibly."

¶ 19    He testified that he called the Division "several times" to "make sure [he] was doing it correctly," but could not give specific dates for these purported calls. He insisted that he "didn't fraudulently do

7

anything" and did not "fraudulently underreport." When asked whether he had ever called the Division specifically to inquire about reporting commissions earned in a prior pay period, he replied, "Not specifically, no."

¶ 20 At the end of the hearing, the investigator testified on redirect that "the fraudulent failure is a failure to disclose material facts," and that Filtz's "failure to report commissions either at the time they were earned or after the check was received qualifies for that definition."

## C. Fraud Findings

¶ 21 Filtz first argues that the Panel should have adopted the hearing officer's findings regarding fraud. We disagree.

¶ 22 The Panel may set aside a hearing officer's evidentiary findings if they are contrary to the weight of the evidence. *Colo. Custom Maid, LLC v. Indus. Claim Appeals Off.*, 2019 CO 43, ¶ 12. The Panel can make its own determination regarding ultimate facts and is not bound by the hearing officer's findings, "so long as the determination has a reasonable basis in law and is supported by substantial evidence in the record." *Samaritan Inst. v. Prince-Walker*, 883 P.2d 3, 9 (Colo. 1994). In this case, we conclude that

8

the Panel properly made findings on the ultimate facts, which was supported by substantial evidence in the record.

¶ 23    The Panel found that the evidence against Filtz was "overwhelming." Although Division records showed that Filtz made numerous calls to the Division, none specifically concerned commissions. The Panel also noted that the record was "replete" with "directions on how to report commissions either timely or retroactively."

¶ 24    Further, the Panel concluded that, even if Filtz was unsure about how much he had earned in commissions during any given month, "such confusion was removed in the following month when the actual commissions were paid." The Panel observed that the commission checks clearly stated both the earnings amount and the relevant earnings period. Nevertheless, once Filtz knew the amounts, he made no effort to correct his reported earnings.

¶ 25    The Division's Unemployment Insurance Handbook was submitted as evidence. The Panel noted that the online weekly certification process directed Filtz to consult the handbook to meet and maintain eligibility requirements. The Panel noted that the

handbook provided extensive explanations and definitions concerning the reporting of commissions.

¶ 26    In addition, the Panel credited the investigator's testimony that a different unit of the Division audited Filtz in 2021. At that time, Filtz was notified that he had underreported his earnings and had received an overpayment. As a result, the Panel concluded that Filtz was familiar with the reporting requirements and "had the knowledge and information to successfully maneuver through" the Division's website. We discern no error in the Panel's ultimate findings of fact and conclude that they are supported by substantial evidence in the record.

¶ 27    The Panel concluded that Filtz's "false statements of earnings were knowing and willful," and that the hearing officer's contrary conclusions were not supported by the weight of the evidence. After thoroughly reviewing the record, we agree.

### D.    Application of Law

¶ 28    Filtz next argues that the Panel misapplied the law governing fraud in unemployment cases. He cites several cases for the proposition that fraud requires "specific intent" and "knowing falsity over time, not good-faith confusion." However, the cases he relies

on address fraud in the context of criminal theft, not unemployment benefits. *See, e.g., People v. Chesnick*, 709 P.2d 66 (Colo. App. 1985) (finding fraud in the context of felony theft); *People v. Russell*, 2013 COA 121, ¶ 2 (finding fraud in the context of felony forgery). We therefore reject this argument.

¶ 29    Filtz also asserts that the Panel "improperly applied" *Division of Employment & Training*, 706 P.2d at 435, arguing that the case defined "knowing" as being "practically certain of falsity." As explained above, that case held that fraud under section 8-81-101(4)(a)(II) requires *either* that the "representation be made knowing it to be false or with an awareness that the maker did not know whether it was true or false." *Id.*

¶ 30    The Panel did not err by concluding that Filtz — who filed for benefits over 150 times and certified under penalty of perjury each time that the information he provided was "valid and accurate" — was at least aware that he did not know whether the information he provided was true or false. We conclude that the Panel's determination that Filtz made a false representation or willfully failed to disclose a material fact under section 8-81-101(4)(a)(II) was not erroneous as a matter of law.

¶ 31    Finally, we reject Filtz's argument that the Panel misapplied

*Boeheim v. Industrial Claim Appeals Office,* 23 P.3d 1247 (Colo. App.

2001).  Filtz cites *Boeheim* to argue that the Panel improperly

presumed knowledge based on "unrebutted hidden work," which he

claims he "rebutted with barriers."  It is unclear what Filtz means

by "unrebutted hidden work" or "rebutted with barriers."  *See*

*People v. Cuellar,* 2023 COA 20, ¶ 44 (declining to address a pro se

party's "undeveloped" arguments (citation omitted)).  In any event,

*Boeheim* held that a claimant who seeks unemployment benefits is

presumed to know the statutory requirements.  *See id.* at 1249.  We

see no error in the Panel's application of *Boeheim.*

### III.    Disposition

¶ 32    We affirm the Panel's order.

JUDGE LIPINSKY and JUDGE SCHUTZ concur.